IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WAYNE A. TRIPP,

       Plaintiff,

       v.                            CASE NO.  25-3042-JWL

D. HUDSON, et al.,

       Defendants.


**MEMORANDUM AND ORDER**

Plaintiff brings this pro se action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff is currently being held at FCI-Milan in Milan, Michigan, but his claims arose during his detention at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"), formerly named USP Leavenworth ("USPL").  On April 7, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 9; "MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for failure to state a claim.  In response, Plaintiff filed an Amended Complaint (Doc. 10; "AC").  This matter is before the Court for screening of the AC pursuant to 28 U.S.C. § 1915A(a).

**I.  Nature of the Matter Before the Court**

The AC states that Plaintiff arrived at FCIL on December 15, 2021, as a pretrial detainee at the height of the COVID pandemic.  (Doc. 10, at 3.)  Plaintiff alleges that he could not access the courts, his attorney, or his family, and he never left his cell unless it was being searched or he was taking a shower.  *Id*.  He states he was allowed to shower every other day, but the water was "dirty brown."  *Id*.

Plaintiff states that Corrections Officers Goldsmith and Early came to his cell on January 21, 2022, and yelled that the guys in Cell 111 (Plaintiff's cell) were snitches.  *Id*.  Plaintiff asserts

that Goldsmith and Early were trying "to get the other high-security inmates to assault Plaintiff if the prison was ever to get taken off lockdown." *Id*. Plaintiff explains that federal prisons are "notorious for their convicted inmates assaulting suspected 'snitches.'" *Id*. This caused Plaintiff to fear for his safety. *Id*.

Goldsmith allegedly returned to Plaintiff's cell on or about February 2, 2022, and asked, "Which one is Tripp?" Plaintiff came to the door, and Goldsmith said, "Keep my fucking name out of your legal mail. If you think you are gonna use my name to be transferred, that ain't gonna get it. If I said you were a snitch, then writing grievances makes it worse! My family works here. My name holds weight so keep my fucking name out of your legal mail." *Id*. at 4. Plaintiff asserts that Goldsmith acted in retaliation for Plaintiff's filing of a grievance against Goldsmith for yelling out that Plaintiff was a snitch. *Id*. at 4, 6.

Later in February, Plaintiff alleges that he was escorted to the video conference room to speak with his attorney. A group of unsecured inmates approached the conference room door. An inmate who served as an orderly for Goldsmith "began accosting the Plaintiff from the other side of the . . . door." *Id*. at 4. He interrogated Plaintiff and said he would be assaulted when the facility came off lockdown. *Id*. The inmate then pulled out a piece of Plaintiff's legal mail and began to read it. *Id*. The inmate brandished an improvised knife before leaving. *Id*. at 5. Throughout the incident, Plaintiff's attorney was listening. *Id*. She asked Plaintiff if he felt like his life was in danger, and Plaintiff nodded "yes." *Id*. The AC states that Plaintiff was transferred to a different facility within 48 hours. *Id*.

The AC brings seven (7) counts: (1) due process violation as a result of being placed in a federal prison as a pretrial detainee; (2) inadequate and unsanitary housing; (3) retaliatory treatment for filing grievances; (4) breach of duty to protect; (5) inadequate visitation and

2

telephone access; (6) inadequate mail facilities resulting in interference with Plaintiff's mail; and (7) violation of Bureau of Prisons administrative regulations.

Plaintiff names as defendants D. Hudson, Warden of FCIL; (fnu) Armeilo, Associate Warden; (fnu) Keller, Captain; (fnu) Goldsmith, Unit Officer; (fnu) Early, Unit Officer; (fnu) DeGhenhardt, Grievance Officer; and (fnu) Chinn, Counselor.[1]  Plaintiff seeks relief in the form of no less than $1 million to compensate him for pain and mental anguish.  *Id*. at 7.

## II.  Legal Standards

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)– (2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

---

[1] The Court notes that Donald Hudson is no longer the warden at FCIL.

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

4

## III.  DISCUSSION

In his AC, Plaintiff addresses some of the deficiencies with the Complaint identified by the Court in the MOSC.  For instance, he removes his habeas claim, provides more factual support for his claims, and clarifies that he is seeking monetary relief.  He also adds several claims.  However, Plaintiff does not address the fact that he fails to state a claim under *Bivens*, either in the original Complaint or the AC.  In addition, Plaintiff does not address the fact that he fails to allege a physical injury, making compensatory damages unavailable.  Last, Plaintiff's claims appear to be barred by the statute of limitations.

### A.  No *Bivens* remedy

As explained in the MOSC, the U.S. Supreme Court has permitted, in extremely limited circumstances, a damages claim against a federal officer in his individual capacity for a deprivation of constitutional civil rights.  *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("In *Bivens* - proceeding on the theory that a right suggests a remedy – [the United States Supreme] Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'") (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 68 (2001)).  To state a *Bivens* claim, a plaintiff must allege the violation of a constitutional right by a federal officer acting under color of federal authority.  *Bivens*, 403 U.S. at 389.

In *Bivens*, the Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment.  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).  Since *Bivens*, the Supreme Court has recognized a *Bivens*

5

remedy in *only two* other cases: *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980).

The Supreme Court has made it clear that expanding the *Bivens* remedy beyond the already recognized contexts is a "disfavored judicial activity." *Abbasi*, 582 U.S. at 135 (quotations omitted). Therefore, a plaintiff may proceed on a *Bivens* action only if the Court determines the action survives a two-part inquiry. First, the Court must determine whether the claim arises under a new *Bivens* context. If not, the claim may be brought under *Bivens*. However, if the claim involves a new context, the Court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

As to the first part of the inquiry, the test is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the United States Supreme] Court[.]" *Abbasi*, 582 U.S. at 139. In other words, courts should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary [based on her gender]; and a claim against prison officials for failure to treat an inmate's asthma [resulting in his death]." *Id.* at 140. Therefore, it is not merely a question of whether a plaintiff's claim arises under the Fourth, Fifth, or Eighth Amendment. "A claim may arise in a new [*Bivens*] context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020).

Plaintiff has not shown that a *Bivens* remedy is available for his claim. The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless." *Logsdon v. U.S. Marshal Serv.*, 91

6

F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024).  The Tenth Circuit in *Logsdon* found that:

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").
>
> And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id.* at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id.* at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id.*

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program ("ARP") was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.'" *Silva*, 45 F.4th at 1141 (citation omitted). The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,'. . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id*. (citing *Egbert*, 596 U.S. at 498 (quoting *Malesko*, 534 U.S. at 71)).

Based on the reasoning set forth in the recent Tenth Circuit opinions cited above, the Court finds that Plaintiff's AC fails to state a claim for relief under *Bivens*.

**B.  Requested relief barred**

In the AC, Plaintiff removed two forms of relief that he had requested in the Complaint (release and transfer) and clarified that he is seeking compensatory damages.

Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff's request for monetary damages fails because he has not claimed that he suffered any physical injury.

**C.  Untimely**

Plaintiff brings claims based on incidents occurring no later than February, 2022. "A *Bivens* action is subject to the same statute of limitations as a 42 U.S.C. § 1983 suit." *Roberts v. Barreras*, 109 F. App'x 224, n.1 (10th Cir. 2004) (citation omitted). The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of

limitations and tolling principles.[2]  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989).  "The forum

state's statute of limitations for personal injury actions governs civil rights claims under both 42

U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat.

Ann. § 60–513(a)."  *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th

Cir. 2006) (citations omitted).

　　While state law governs the length of the limitations period and tolling issues, "the accrual

date of a § 1983 cause of action is a question of federal law."  *Wallace v. Kato*, 549 U.S. 384, 388

(2007).  Under federal law, the claim accrues "when the plaintiff has a complete and present cause

of action."  *Id.* (internal quotation marks and citation omitted).  In other words, "[a] § 1983 action

accrues when facts that would support a cause of action are or should be apparent."  *Fogle v.*

*Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted),

*cert. denied* 549 U.S. 1059 (2006).  A district court may dismiss a complaint filed by an indigent

plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute

of limitations.  *Id.* at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v.*

*Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

　　It plainly appears from the face of the AC that Plaintiff's claims are subject to dismissal as

barred by the applicable two-year statute of limitations.  Plaintiff's original Complaint (Doc. 1)

was filed on March 6, 2025.  Plaintiff's last alleged violation occurred in late February, 2022.  It

thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims took

place more than two years prior to the filing of Plaintiff's Complaint and are time-barred.  *See*

---

[2] Although the Kansas Supreme Court tolled the state statutes of limitations in response to the COVID-19 pandemic,
it was reinstated prior to the events underlying the claims in this case. *See Korgan v. Estate of Hansen by and through*
*Cramer*, 2022 WL 4465074, at *2–4 (D. Kan. Sept. 26, 2022) (finding that the statute of limitations was tolled from
March 19, 2020 through April 14, 2021).  The tolling or suspension is set forth in Kansas Supreme Court
Administrative Order 2020-PR-016, as amended by Kansas Supreme Court Administrative Order 2020-PR-32.  The
AO reinstated the statute of limitations effective April 15, 2021.

*Fratus v. Deland*, 49 F.3d 673, 674–75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed).  Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling.

## IV.  Conclusion

Plaintiff was given the opportunity to show cause why this action should not be dismissed for failure to state a *Bivens* claim and failure to request available relief.  The AC filed in response to the MOSC also fails to state a claim under *Bivens* and fails show good cause why this matter should not be dismissed.  Furthermore, this matter is barred by the statute of limitations.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim upon which relief may be granted and as barred by the statute of limitations.

**IT IS SO ORDERED**.

**Dated May 30, 2025, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**